SHAPERO v. DEPARTMENT OF REVENUE.

1. TAXATION—INTANGIBLES—SPECIFIC TAXES—UNIFORMITY.

The tax levied under the intangibles tax act is specific, being
levied directly by legislative enactment upon ownership of
designated personal property, and is not arbitrary, discrimina-
tory or inequitable, nor does the rule of uniformity required
in case of ad valorem taxes apply (Const. 1908, art. 10, §§ 3,
4; Act No. 301, Pub. Acts 1939, as amended by Act No. 165,
Pub. Acts 1945).

2. SAME—UNIFORMITY—AD VALOREM TAXES—SPECIFIC TAXES.

The rule of uniformity as to ad valorem taxes, as required by
the Constitution, does not extend to property paying specific
taxes as the legislature is given authority to impose specific
taxes which shall be uniform upon the classes upon which they
operate (Const. 1908, art. 10, §§ 3, 4).

3. SAME—TAX ON INTANGIBLES—UNIFORMITY.

The tax imposed upon intangible personal property is uniform
upon the classes upon which it operates (Const. 1908, art. 10,
§ 4; Act No. 301, Pub. Acts 1939, as amended by Act No.
165, Pub. Acts 1945).

4. SAME—UNIFORMITY—AD VALOREM TAXES—DOUBLE TAXATION—
SPECIFIC TAXES.

The uniform rule of taxation applicable to ad valorem taxes
forbids double taxation of property subjected thereto but such
rule has no application to property paying specific taxes
(Const. 1908, art. 10, §§ 3, 4).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am. Jur., Taxation, §§ 26, 150, 156–158.
[2] 51 Am. Jur., Taxation, § 150.
[3] 51 Am. Jur., Taxation, §§ 150, 420.
[4] 51 Am. Jur., Taxation, §§ 156, 284, 285.
[5] 51 Am. Jur., Taxation, §§ 490, 523.
[7] 14 Am. Jur., Costs, § 23.

5. SAME—INTANGIBLES—EXEMPTION—DOUBLE TAXATION—SHARES OF
STOCK.

> Provision of statute imposing a tax on intangible personal prop-
> erty which exempted from such tax intangible personal prop-
> erty representing other property otherwise taxed under that
> or other laws and so closely identified therewith as to impose
> an additional tax under the intangibles tax act that would
> be unconstitutional as double taxation does not exempt from
> such taxation shares of stock in domestic corporations (Act
> No. 301, § 3 subd. [b] [13], Pub. Acts 1939, as amended by
> Act No. 165, Pub. Acts 1945).

6. COSTS—PUBLIC QUESTION—CONSTRUCTION OF TAX LAW.

> No costs are allowed in action to recover intangible personal
> property taxes paid on shares of stock and claimed to have
> resulted in double taxation that was unconstitutional, a public
> question being involved (Const. 1908, art. 10, §§ 3, 4; Act No.
> 301, Pub. Acts 1939, as amended by Act No. 165, Pub. Acts
> 1945).

REID, DETHMERS, and CARR, JJ., dissenting.

Appeal from Wayne; Maher (Thomas F.), J.
Submitted April 6, 1948. (Docket No. 13, Calendar
No. 43,999.) Decided September 8, 1948.

Assumpsit by Samuel Shapero and another
against State of Michigan, Department of Revenue,
to recover intangible tax paid under protest. Judg-
ment for defendant. Plaintiffs appeal. Affirmed.

*Shapero & Shapero,* for plaintiffs.

*Eugene F. Black,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, *T. Carl Holbrook* and
*Daniel J. O'Hara,* Assistants Attorney General, for
defendant.

*Amici curiae:*
*Raymond J. Kelly,* Corporation Counsel, and *John
H. Witherspoon* and *Helen W. Miller,* Assistants
Corporation Counsel, for City of Detroit.

*Dickinson, Wright, Davis, McKean & Cudlip.*

Carr, J. (*dissenting*). The facts in this case are not in dispute. During the calendar year 1945 plaintiffs were the owners of shares of stock in certain Michigan corporations. In March, 1946, they advised defendant with reference to such ownership, making claim at the same time that the shares were not taxable under the provisions of Act No. 301, Pub. Acts 1939, as amended by Act No. 233, Pub. Acts 1941 and Act No. 165, Pub. Acts 1945 (Comp. Laws Supp. 1940, 1945, § 3658–1 *et seq.*, Stat. Ann. 1945 Cum. Supp. § 7.556 [1] *et seq.*), commonly referred to as the Michigan intangibles tax act. Said statute has been further amended by Act No. 175, Pub. Acts 1947, but for obvious reasons such amendment has no bearing on the issues in the case.

The department of revenue took the position that, under the provisions of the amendatory act of 1945, such shares were taxable, and made an assessment accordingly. Thereupon plaintiffs paid the taxes under protest, as expressly authorized by section 13 of the law as originally enacted in 1939, and brought suit in circuit court to recover the amount so paid. The department filed its answer, admitting the facts averred in the declaration except as to the actual payment of taxes by the corporations under the general property tax law of the State, and denying the right to the relief sought. Thereupon the parties entered into a stipulation setting forth that the facts were as pleaded by plaintiff except that one of the corporations had not actually paid the taxes assessed against it on its property. Plaintiffs moved for judgment on the pleadings and defendant did likewise. The trial court concluded that plaintiffs' claim was not well founded and rendered judgment accordingly. From such judgment plaintiffs have appealed.

It is the claim of plaintiffs that the intangibles tax act may not properly be construed as undertaking to impose a tax on shares of stock in Michigan corporations the property of which is located in this State and is taxed under the general property tax law. It is urged that the imposition of such tax results in double taxation and that as such it is forbidden by the Constitution of the State. Reliance is placed on article 10, §§ 3 and 4, of the Michigan Constitution. Said sections are as follows:

"Sec. 3.    The legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law: Provided, That the legislature shall provide by law a uniform rule of taxation for such property as shall be assessed by the State board of assessors, and the rate of taxation on such property shall be the rate which the State board of assessors shall ascertain and determine is the average rate levied upon other property upon which ad valorem taxes are assessed for State, county, township, school and municipal purposes.

"Sec. 4.    The legislature may by law impose specific taxes, which shall be uniform upon the classes upon which they operate."

It is the position of the plaintiffs that the tax imposed by the statute above cited, on intangible personal property, is a property tax, that the shareholders are the corporation and as such own its property, and that taxing both the shares of stock and the property violates the requirements as to uniformity imposed by the Constitution, notwithstanding that one tax is on an ad valorem basis while the other is specific. Attention is directed to the fact that the provisions in question were carried forward into the present Constitution from the Constitution of 1850 and it is claimed that this was done in the light of the construction placed thereon by this

Court in prior decisions. In further support of the claim that the statute does not contemplate the taxation of the shares of stock, plaintiffs call attention to section 3 (b) of the intangibles tax act, as amended, wherein are listed several exemptions including the following:

"(13)   Intangible personal property which represents other property taxed under this act or other laws of this State and is so closely identified therewith that to impose an additional tax under this act would be unconstitutional as double taxation."

This provision was included in the statute as enacted in 1939, appearing therein as section 3 (b) (14). In substance plaintiffs contend that the language of the intangibles tax act must be construed to accord with the above quoted sections of the Constitution as construed in prior decisions of this Court, and effect given to the statutory provision quoted.

The title of the act as originally enacted in 1939 indicated the purpose to be "the imposition and the collection of a specific tax upon the ownership of intangible personal property." Section 2, which provided for the levying of the tax, followed the language of the title. By the amendment of 1945, however, the title was so amended as to make the tax, in terms, a burden on the "privilege of ownership of" the property declared subject to taxation. A similar amendment was made to section 2. It is contended on behalf of defendant that the tax in question should be construed as a privilege tax rather than a specific tax on property, that the uniformity requirements imposed by the Constitution have no application, that there is in fact no double taxation, and that the statute, as amended by the act of 1945, cannot properly be construed as contemplating an exemption from the intangibles tax of the shares

of stock involved in this case.  As indicating the legislative intent, emphasis is placed on the fact that under the statute as enacted in 1939 the shares were specifically exempted under section 3 (b) (13), which read as follows:

"(13) That proportion of each share of capital stock owned by a taxpayer or of the dividends on such share of stock which the corporation's property both tangible and intangible owned or used in Michigan is of the entire property of such corporation wheresoever located."

This provision was omitted from the amendment of 1945 and defendant says that the purpose of such omission was to permit the taxation of shares of stock in a corporation notwithstanding that the corporate property is taxed under the general property tax law.

The first question presented in the case, the nature of the tax imposed by the statute in question, must be determined by reference to the provisions of the act and the general purpose sought to be accomplished thereby.  For reasons of public policy it is apparent that the legislature deemed it expedient to remove certain types of personal property from the purview of the general property tax law of the State and to subject them to taxation on a basis other than the true cash value of such property.  It is a matter of common knowledge that a large proportion of intangible personal property was not actually subjected to the payment of taxes under the ad valorem method.  The result was the substituted form of taxation set forth in Act No. 301, Pub. Acts 1939.

The constitutionality of the intangibles tax law was upheld by this Court in *Shivel* v. *Kent County Treasurer*, 295 Mich. 10.  It was referred to in the opinion in that case as imposing "a specific tax on

intangible personal property." It does not appear
that any claim was made that the tax was other than
one on property. The provisions of the statute clear-
ly indicate that such was the intention of the legisla-
ture. The provisions of section 2 with reference to
the computation of the tax and the property on
which it is levied are wholly inconsistent with any
other theory. Section 6 of the act, both as originally
passed and in its amended form, contemplates that,
under regulations adopted with reference thereto,
one who has intangible personal property of another
in his possession may be required to pay the tax
thereon. The tax is clearly imposed on specific
classes of property, and the exemptions are likewise
of specific classes of property. The following pro-
vision, contained in section 2 of the original act, is
especially significant:

"Intangible personal property subject to tax un-
der this act shall be exempt from all general prop-
erty taxes under the laws of this State."

This clause was amended by Act No. 165, Pub.
Acts 1945, to read as follows:

"Intangible personal property subject to tax un-
der this act or expressly exempt from the tax here-
under shall be exempt from all general property tax-
es under the laws of this State."

The interpolation of the word "privilege" in the
amendment of 1945 did not change the nature of the
tax imposed by the act. It was a specific property
tax in its inception and it remained such under the
act as amended. The supreme court of the United
States in *Dawson v. Kentucky Distilleries & Ware-
house Co.*, 255 U. S. 288 (41 Sup. Ct. 272, 65 L. Ed.
638), in holding that a tax imposed under an act of
Congress and described as "a license tax" was actu-
ally a property tax, said:

"The name by which the tax is described in the statute is, of course, immaterial. Its character must be determined by its incidents; and obviously it has none of the ordinary incidents of an occupation tax. * * * To levy a tax by reason of ownership of property is to tax the property. * * * It cannot be made an occupation or license tax by calling it so."

See, also, *Tyler* v. *Department of Revenue,* 311 Mich. 698, in which this Court discussed the intangibles tax from the standpoint of its being a specific tax on property. In view of the express language of the statute and the prior decisions in which it has been considered we are unable to agree with defendant's contention that in its present form it provides for the imposition of a privilege tax. It is levied on property and must be construed accordingly.

The constitutional provisions above quoted, on which plaintiffs rely, have been before the Court in several cases, some of which were decided before the adoption of the Constitution of 1908. As before noted, said provisions were contained in the previous Constitution of 1850, and it must be assumed that they were incorporated in the present fundamental law with the intent and purpose that they should be interpreted and applied as previously construed. In 16 C. J. S. p. 76, it is said:

"It is an established rule of construction that, where a constitutional provision has received a settled judicial construction, and is afterwards incorporated into a new or revised constitution, or amendment, it will be presumed to have been retained with a knowledge of the previous construction, and courts will feel bound to adhere to it. Prior legislative construction is, likewise, presumed to have been adopted by subsequent adoption of the provisions so construed."

An analogous rule has been repeatedly applied in the interpretation of statutes. *People, ex rel.*

*Simmons,* v. *Township of Munising,* 213 Mich. 629; *People, ex rel. Attorney General,* v. *Welch's Estate,* 235 Mich. 555; *In re Cox's Estate,* 284 Mich. 628 (117 A. L. R. 1224); *Amicucci* v. *Ford Motor Co.,* 308 Mich. 151.

In *Stroh* v. *City of Detroit,* 131 Mich. 109, plaintiff was assessed for city taxes on the value of shares of stock in a foreign corporation all the property of which was situated, and assessed for taxes, in the city of Detroit. An action was brought to compel the vacating of the assessment on the ground that it constituted double taxation and as such was prohibited under the requirement as to uniformity prescribed in the Constitution of 1850. In affirming a determination of the issue in favor of the plaintiff it was said in part:

"We have been compelled to sustain double taxation in some cases, because we felt constrained to hold that the constitutional inhibition against double taxation only applies to such taxation by this State. See *City and County of San Francisco* v. *Fry,* 63 Cal. 470; *Bacon* v. *Board of State Tax Commrs.,* 126 Mich. 22 (60 L. R. A. 321, 86 Am. St. Rep. 524). It has not been held in this State that a case like the present does not involve double taxation, and we have never held that such a double taxation would be legal. We should hesitate to hold that it would not be double taxation, and therefore legal, in the case of an assessment of shares in a domestic corporation whose property was actually taxed in this State, and we see no justification for declaring a different rule where the corporation is a foreign one.

"The taxation of shares to the shareholder, and property to the corporation, is clearly double taxation, within the spirit of the constitutional provision, and while we appreciate the fact that the shareholders and the corporation are different entities in the law, and that shares of stock are recognized as property, and distinct from the corporate property,

it is plain that the shareholders are the corporation, and that they are the owners of its property. The Constitution does not permit the taxation of both property and shares, and we must, if possible, give such a construction to the law as to make it reconcilable with the Constitution."

The Court also called attention to the policy of this State, as evidenced by its statutes relating to the assessment and collection of taxes, with reference to the exemption of corporate shares when the property of the corporation was not taxed to itself. It was also recognized that the decisions in other States were not in harmony, some courts holding that a tax on shares of stock in a corporation may be levied notwithstanding the fact that the property of the corporation is also taxed by the same governmental authority. It is of course true that pertinent constitutional provisions vary in the different States. However, the decision in the *Stroh Case* squarely held, as suggested in the language above quoted, that the shareholders own the property of the corporation, and that to permit the taxation of both property and shares in this State constitutes double taxation in violation of the uniformity requirement of the State Constitution. See, also, *Montgomery* v. *Central National Bank & Trust Company of Battle Creek,* 267 Mich. 142.

Applying the rule previously recognized in *Bacon* v. *Board of State Tax Commissioners,* 126 Mich. 22 (60 L. R. A. 321, 86 Am. St. Rep. 524), it was held in *Thrall* v. *Guiney,* 141 Mich. 392 (113 Am. St. Rep. 528), that shares of stock in a foreign corporation were taxable in Michigan on the basis of a valuation diminished in the proportion which the value of the corporation's property in Michigan bore to all its property. The general rule as to double taxation applied in the *Stroh Case* was re-stated. The *Stroh Case* was again quoted with approval in *City of*

*Detroit* v. *Kresge,* 200 Mich. 668. See, also, *Detroit Citizens' Street-Railway Co.* v. *Common Council of Detroit,* 125 Mich. 673 (84 Am. St. Rep. 589) ; *Union Trust Co.* v. *Common Council of City of Detroit,* 170 Mich. 692; *Voorhies* v. *Walker,* 227 Mich. 291.

In *First National Bank of Wyandotte* v. *Common Council of Detroit,* 253 Mich. 89, this Court again recognized that the rule in many jurisdictions permitted the taxation of the property of a corporation, and also the taxation of the shares in such corporation to the stockholders by the same governmental authority. It was further said, "This is not the rule in Michigan," and the Court quoted with approval from the *Stroh Case,* citing also *Detroit Citizens Street-Railway Co.* v. *Common Council of Detroit, supra; Thrall* v. *Guiney, supra;* and *Union Trust Co.* v. *Detroit Common Council, supra.* It was further stated:

"The State Constitution (section 3, art. 10) requires that there be a uniform rule of taxation, and this forbids double taxation. *Stroh* v. *City of Detroit, supra.*"

It was held, pursuant to the rule of law established in Michigan by the cases cited, that the plaintiff, who was the owner of bank shares subject to taxation under the general property tax law, was entitled to a deduction, in fixing the value of such shares for assessment purposes, of specific credits of the bank secured by real property liens on which the specific tax had been paid under Act No. 91, Pub. Acts 1911 (1 Comp. Laws 1929, § 3640 *et seq.* [Stat. Ann. § 7.421 *et seq.*]). It will be noted that in this case one of the taxes concerned was a specific tax. In *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659, it was said (p. 685):

"Double taxation is not permissible (*Detroit Citizens Street-Railway Co.* v. *Common Council of De-*

*troit,* 125 Mich. 673 [84 Am. St. Rep. 589] ; *Stroh* v. *City of Detroit,* 131 Mich. 109), because prohibited by the constitutional rule prescribing uniformity of taxation."

The tax there involved, however, was levied on the privilege of operating chain stores, imposed under the provisions of Act No. 265, Pub. Acts 1933. It was accordingly held that there was no double taxation, the Court recognizing that taxes may be imposed on property belonging to a business and on the privilege of carrying on the business. See, also, *Banner Laundering Co.* v. *State Board of Tax Administration,* 297 Mich. 419; *Miller* v. *Michigan State Apple Commission,* 296 Mich. 248; and *Kull* v. *Michigan State Apple Commission,* 296 Mich. 262, in which the statutes involved imposed privilege taxes.

It is apparent that the *Stroh Case* has since its decision been regarded as establishing the rule of law in this State on the issues there involved. The legislative policy has been consistent with it. Section 8 of the general property tax law (1 Comp. Laws 1929, § 3396, amended by Act No. 94, Pub. Acts 1931, Comp. Laws Supp. 1940, § 3396, Stat. Ann. § 7.8) provides for the taxation of various classes of personal property, including:

"7. All shares in corporations organized under the laws of this State, when the property of such corporations is not exempt, or is not taxable to itself; or when the personal property is not taxed."

Thus, at the time the intangibles tax law was adopted in 1939, shares of stock in a corporation, the property of which was taxed in this State under the general property tax law, were not taxable under said law. The provision above quoted, specifically exempting corporate shares under such circumstances, was in keeping with the prior legislative policy. It may be noted also that under date of July

28, 1941, the then attorney general of the State rendered an opinion to the State tax commission to the effect that imposing taxes on certain royalties under the intangibles tax law and also under Act No. 48, Pub. Acts 1929,* providing for a severance tax on oil and gas produced within this State, was double taxation and was within the inhibition of the uniformity rule of the Constitution. Attorney General's Report, 1941–1942, p. 262.

Under the prior decisions of this Court, above cited, two propositions are definitely established: First, double taxation of property violates the uniformity requirement of the Constitution as prescribed with reference to the levying and collecting of property taxes; second, the taxing of corporate property located wholly in this State and the taxing of the shares of stock in the hands of the shareholders constitutes double taxation on the theory that the stockholders own the property of the corporation. Applying these principles to the facts of the case at bar the conclusion follows that plaintiffs may not properly be taxed under the intangibles tax law on the shares of stock involved in this controversy. The fact that the tax so imposed is a specific property tax rather than one levied on an ad valorem basis does not alter the situation. Taxing, under the general property tax law of the State, property on which a specific tax is also required to be paid is repugnant to the uniformity requirement of the Constitution as heretofore construed. *First National Bank of Wyandotte* v. *Common Council of Detroit, supra.*

It should be further noted that no question of double taxation was involved in *Shivel* v. *Kent County Treasurer, supra,* in which the validity of the intangibles tax law as originally enacted was sus-

---

* 1 Comp. Laws 1929, § 3604 *et seq.* (Stat. Ann. § 7.351 *et seq.*).— Reporter.

tained.   Language used in the opinion may not be construed as an adjudication that the State may impose a specific tax and also an ad valorem tax on the same property. *McNally* v. *Board of Canvassers of Wayne County,* 316 Mich. 551; *Stevenson* v. *Brotherhoods Mutual Benefit,* 317 Mich. 575.   Objections based on the uniformity requirements of the Constitution were premised on the fact that different rates of taxation were imposed on different classes of personal property.   The Court found that such objections were not tenable.

Should Act No. 165, Pub. Acts 1945, be construed as providing for the taxation of the shares of stock here involved?   We think not.   The rule is too well-settled to require citation of authority that if a statute may reasonably be so construed as to avoid constitutional objections, it is the duty of the court to adopt such construction.   It is true that the omission in the amendatory act of the prior provision of the statute providing expressly for the exemption, or partial exemption, of shares of stock in a corporation which is taxed in this State on its property, or on a portion of it, may not be ignored.   On the other hand it may be noted that the legislature inserted no specific provision affirmatively requiring such taxation but did re-enact the provision hereinbefore quoted (section 3 [b] [13] of the amended act) with reference to the exemption of "intangible personal property which represents other property taxed under this act or other laws of this State and is so closely identified therewith that to impose an additional tax under this act would be unconstitutional as double taxation."   It must be assumed that this clause was re-enacted in the amendatory act for a specific purpose.   It is in effect a declaration that the legislature did not intend, by any provision of the statute, to attempt to provide for double taxation.   It may not be regarded as a nullity; rather, it

must be viewed as a guide to ascertaining the legislative intent and construing the act in accordance therewith. In this connection we call attention again to the following provision found in section 2 of the act as amended:

"Intangible personal property subject to tax under this act or expressly exempt from the tax hereunder shall be exempt from all general property taxes under the laws of this State."

This clause is certainly not ambiguous. Property that is subject to tax under the intangibles tax law, or is expressly exempt thereunder, is not subject to general property taxes under the State law pertaining thereto. It must be presumed that the legislature had in mind in the enactment of this provision the established rule in Michigan, above discussed, that owners of shares of stock in a corporation are the real owners of the property of such corporation so that taxes on such property and on the shares are in legal effect levied on the same property. If in the instant case the shares of stock owned by plaintiffs are subject to the intangibles tax, application of the rule referred to would result in the exemption from taxation, under the general property tax law of the State, of the property of the corporations. Bearing in mind the purpose of the intangibles tax act, we do not think it can be said that any such result was intended. The exemption would result from the express terms of the statute even though the constitutional provision with reference to uniformity of taxation were to be construed as not forbidding a specific tax and an ad valorem tax on the same property, as counsel for defendant in effect contend it should be. As before noted, we are not in accord with such claim.

The basic rule governing the construction of statutes is to ascertain the intention of the legislature

and give effect thereto insofar as possible. In *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282 (98 A.L.R. 827), it was said (p. 297):

" 'Where the language of a statute makes its meaning obscure, it is the duty of the courts to construe, giving it a reasonable and sensible interpretation; but where the language is clear and unambiguous, it is only for the courts to obey and enforce it.' *Crary* v. *Marquette Circuit Judge,* 197 Mich. 452.

" 'Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests.' 2 Lewis' Sutherland Statutory Construction (2d Ed.), § 490."

See, also, *City of Grand Rapids* v. *Crocker,* 219 Mich. 178; *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich. 225; *Zawacki* v. *Detroit Harvester Co.,* 310 Mich. 415. Applying the rule stated to the instant case leads to the conclusion that the intangibles tax law as amended may not properly be construed as contemplating the taxation thereunder of shares of stock in a corporation the property of which is located, and is taxable to the corporation, in Michigan. The statute may in other words be construed to obviate objections thereto based on the provisions of the Constitution of the State above discussed, and likewise to avoid results that we think were not intended.

For the reasons stated the judgment of the trial court should be reversed and the case remanded with directions to enter judgment for the plaintiffs in accordance with the stipulation of the parties. A question of a public nature being involved, no costs are allowed.

REID and DETHMERS, JJ., concurred with CARR, J.

Butzel, J. The judgment of the circuit court upholding the validity of the intangible tax on the shares of stock held by plaintiffs in Michigan corporations should be affirmed. There is no question but that if an ad valorem tax had been levied against such stock, it would have resulted in double taxation under the authority of *Stroh* v. *City of Detroit,* 131 Mich. 109, *City of Detroit* v. *Kresge,* 200 Mich. 668, and other cases cited by Mr. Justice Carr in the foregoing opinion.

Act No. 301, Pub. Acts 1939, as amended by Act No. 233, Pub. Acts 1941, and Act No. 165, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 3658-1 *et seq.,* Stat. Ann. 1945 Cum. Supp. § 7.556[1] *et seq.*), commonly referred to as the Michigan intangible tax law, was enacted by the legislature long after the decisions in *Stroh* v. *City of Detroit, supra,* and other cases affecting ad valorem taxes on shares of stock were rendered.

The questions raised by this case were before us in *Shivel* v. *Kent County Treasurer,* 295 Mich. 10, where we unanimously held that the tax in question was "specific" in nature, which determination fully disposes of the instant case. Justice Wiest, speaking for the Court, said:

"The tax is specific, being levied directly by legislative enactment upon ownership of designated personal property and cannot be held arbitrary, discriminatory or inequitable, and the rule of uniformity required by the Constitution, art. 10, § 3, in case of ad valorem tax, has no applicability.

"In *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659, 672, we held:

" 'The rule of uniformity does not extend to property paying specific taxes. The legislature is given authority to impose specific taxes which shall be uniform upon the classes upon which they operate. Constitution 1908, art. 10, § 4.'

"The tax in question is uniform upon the classes upon which it operates."

It is the rule of uniformity prescribed by article 10, § 3, which forbids double taxation. *Attorney General* v. *Sanilac Board of Supervisors,* 71 Mich. 16; *Stroh* v. *City of Detroit, supra; First National Bank of Wyandotte* v. *Detroit Common Council,* 253 Mich. 89; *C. F. Smith Co.* v. *Fitzgerald, supra.* And this rule of uniformity has no application to property paying specific taxes under the plain language of the constitutional provision.

Stress is placed by appellants upon the fact that in section 3, as amended by Act No. 165, Pub. Acts 1945 (Stat. Ann. 1946 Cum. Supp. § 7.556[3]), there still appears the following provision:

"(b) The following shall be exempt from the tax imposed by this act: * * *

"(13) Intangible personal property which represents other property taxed under this act or other laws of this State and is so closely identified therewith that to impose an additional tax under this act would be unconstitutional as double taxation."

However, the same act provides in express terms for a specific tax on the ownership of shares of corporate stock. We believe the clause we have quoted does not exempt from such taxation shares of stock in Michigan corporations, for if it did the provision in regard to the specific tax on shares of stock would be meaningless. The quoted clause probably was inserted so as to prevent an ad valorem tax on shares of stock in Michigan corporations.

We shall not discuss the history of taxes on intangibles in this State prior to the enactment of the present specific tax on intangibles. The prior laws brought about unjust, discriminatory and in many respects confiscatory results and led to attempts at evasion, and, as pointed out in the briefs,

resulted in the flight of capital from this State. The question of the wisdom of the tax, however, is not before us. We have the unanimous opinion of this Court in *Shivel* v. *Kent County Treasurer, supra,* that the rule of uniformity prescribed by article 10, § 3, of the Constitution does not apply to this intangible tax as it does in the case of an ad valorem tax. This, in my opinion, settles the question.

The judgment of the lower court in favor of defendant is affirmed, but without costs, a public question being involved.

BUSHNELL, C. J., and SHARPE, BOYLES, and NORTH, JJ., concurred with BUTZEL, J.